UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

GUZMAN DIAZ,

                                        Plaintiff,

                -against-

CITY OF NEW YORK, DETECTIVE KEITH ADAMISZYN, DETECTIVE ANTHONY VIGNONE, DETECTIVE DANIEL AUTERA, POLICE OFFICER ANDREW PIZZINO, and SERGEANT JUAN CRUZ,

                                    Defendants.

-------------------------------------------------------------------------x

SECOND AMENDED COMPLAINT

18 CV 551 (WFK) (RER)

**JURY TRIAL DEMANDED**

Plaintiff Guzman Diaz, by his attorneys, MoutonDell'Anno LLP, respectfully alleges:

## NATURE OF THE ACTION

1. This is an action to recover money damages arising out of the violation of Mr. Diaz's rights under the Constitution of the United States.

## JURISDICTION AND VENUE

2. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

3. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343, and 1367(a).

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c).

## JURY DEMAND

5. Mr. Diaz demands a trial by jury in this action.

## PARTIES

6. Plaintiff Guzman Diaz is a resident of the State of New Jersey

7. Defendant City of New York is a municipal organization organized under the laws of the State of New York.

8. Defendant City of New York operates the New York City Police Department ("NYPD"), a department or agency of Defendant City of New York.

9. The NYPD is responsible for the appointment, training, supervision, promotion, and discipline of police officers and supervisory police officers, including the individually named defendants herein.

10. At all times relevant herein, Defendant Detective Keith Adamiszyn ("Adamiszyn") was an officer, employee, and/or agent of Defendant City of New York.

11. At all times relevant herein, Defendant Adamiszyn was acting within the scope of his employment with Defendant City of New York.

12. At all times relevant herein, Defendant Adamiszyn was acting under color of state law.

13. Defendant Adamiszyn is sued in his individual and official capacities.

14. At all times relevant herein, Defendant Detective Anthony Vignone ("Vignone") was an officer, employee, and/or agent of Defendant City of New York.

15. At all times relevant herein, Defendant Vignone was acting within the scope of his employment with Defendant City of New York.

16. At all times relevant herein, Defendant Vignone was acting under color of state law.

17. Defendant Vignone is sued in his individual and official capacities.

18. At all times relevant herein, Defendant Detective Daniel Autera ("Autera") was an officer, employee, and/or agent of Defendant City of New York.

19. At all times relevant herein, Defendant Autera was acting within the scope of his employment with Defendant City of New York.

20. At all times relevant herein, Defendant Autera was acting under color of state law.

21. Defendant Autera is sued in his individual and official capacities.

22. At all times relevant herein, Defendant Police Officer Andrew Pizzino ("Pizzino") was an officer, employee, and/or agent of Defendant City of New York.

23. At all times relevant herein, Defendant Pizzino was acting within the scope of his employment with Defendant City of New York.

24. At all times relevant herein, Defendant Pizzino was acting under color of state law.

25. Defendant Pizzino is sued in his individual and official capacities.

26. At all times relevant herein, Defendant Sergeant Juan Cruz ("Cruz") was an officer, employee, and/or agent of Defendant City of New York.

27. At all times relevant herein, Defendant Cruz was acting within the scope of his employment with Defendant City of New York.

28. At all times relevant herein, Defendant Cruz was acting under color of state law.

29. Defendant Cruz is sued in his individual and official capacities.

## STATEMENT OF FACTS

30. Mr. Diaz has children with his ex-wife, Ms. Muso.

31. On or about February 12, 2015, Mr. Diaz arranged for flowers to be sent to his children for Valentine's Day at the address that they share with Ms. Muso.

32. The flowers were not sent to Ms. Muso as the card enclosed with the flowers clearly directed to Mr. Diaz's children.

33. Upon information and belief, Ms. Muso told the individual defendants, who work at the NYPD's 114th Precinct, that Mr. Diaz had violated an order of protection which prohibited Mr. Diaz from contacting Ms. Muso in that he sent her flowers and a card for Valentine's Day.

34. Upon information and belief, the individual defendants knew that this was false because, after performing an investigation, they, among other things, reviewed the card that was enclosed with the flowers which was not addressed to Ms. Muso.

35. The individual defendants also knew this was false because they were very aware that there were ongoing family court proceedings occurring between Mr. Diaz and Ms. Muso which resulted in superseding orders visitation orders being issued.

36. Since 2011, Mr. Diaz has had numerous contacts with members of the 114th Precinct, including the individual defendants named herein. It is well known throughout the precinct that Ms. Muso and Mr. Diaz are engaged in ongoing visitation and custody disputes in family court.

37. Ms. Muso has used members of the 114th Precinct numerous times since 2011 in an attempt to gain an advantage in these proceedings, filing police reports at the 114th Precinct and seeking protective orders just before court dates in the family court matter.

38. Upon information and belief, prior to 2011, Ms. Muso had caused the members of the 114th Precinct, including the individual defendants herein, to arrest Mr. Diaz three to four times. In each instance but one, Mr. Diaz was arrested at the Queens County Family Courthouse in Jamaica, New York by these officers. Thus, they were quite aware of the ongoing proceedings.

39. Furthermore, members of the 114th Precinct have talked numerous times to Mr. Diaz, both by phone and in person since 2011. During those conversations, Mr. Diaz discussed

the ongoing family court proceedings and his wife's tactics in gaining an advantage with the members of the 114th Precinct, including with the individual defendants.  Since 2011, Mr. Diaz has also presented these officers with family court orders to prove to these officers that documents brought in by Ms. Muso had been superseded and no longer in effect.

40. Furthermore, there have been numerous occasions since 2013 that Mr. Diaz and Ms. Muso have exchanged all of their children at the 114th Precinct.  In order to provide and smooth and orderly exchange, Mr. Diaz would pick up and drop off all of his kids inside of the 114th Precinct.  During some of those exchanges, Mr. Diaz would discuss his situation, alerting the officers, including, upon information and belief, the individual defendants herein, about the exchange, the superseding family court orders, and the situation between himself and Ms. Muso.  These officers watched the exchanges occur and it was known throughout the precinct that these exchanges occurred, there was contentious litigation between Ms. Muso and Mr. Diaz, and that family court orders existed that allowed Mr. Diaz to have contact with all of his children.

41. In fact, by February 12, 2015, the family court had issued a superseding order of protection and a superseding order of visitation.  These order of protection did not completely bar complete contact with, and the visitation order granted Mr. Diaz visitation and contact with his children.

42. Upon information and belief, with regard to the instant arrest, the individual defendants contacted Mr. Diaz, telling him that his wife had complained that he had violated an order of protection issued by the criminal court and demanded that he turn himself in.

43. As he had previously, Mr. Diaz told the individual defendants that the criminal court order of protection was no longer in effect as it had been superseded by family court orders

that granted him visitation with all of his children and did not completely bar contact with Ms. Diaz.

44. Upon information and belief, the individual defendants came to the Queens County Family courthouse in Jamaica, New York on February 23, 2015.

45. Mr. Diaz was present at the courthouse that day attending a hearing or conference in the custody and visitation matter between himself and Ms. Muso.

46. Upon information and belief, the individual defendants placed or caused or directed Mr. Diaz to be placed under arrest inside the courtroom, and parading him through the courthouse in handcuffs as they took him out of the courthouse.

47. At or about the time that Mr. Diaz was placed under arrest, the individual defendants were, again, made aware of superseding family court orders.

48. Mr. Diaz's arrest was without probable cause.

49. Upon information and belief, Mr. Diaz's arrest was approved by one of the individual defendants.

50. Upon information and belief, the individual defendants spoke with the Queens County District Attorneys' Office, individually and collectively lying to the Queens County District Attorney's Office that Mr. Diaz had violated New York Penal Law § 215.50(3).

51. Upon information and belief, based on these fabricated allegations, the Queens County District Attorney's Office forwarded to the individual defendants a Criminal Court Complaint.

52. Upon information and belief, the Criminal Court Complaint was reviewed and then signed by the individual defendants.

53. Upon information and belief, when reviewing and signing the Criminal Court Complaint, the individual defendants knew the allegations contained therein to be false.

54. Upon information and belief, the executed Criminal Court Complaint was then forwarded by the individual defendants to the Queens County District Attorney's Office.

55. Legal process was issued against Mr. Diaz, and Mr. Diaz was subsequently arraigned.

56. Upon information and belief, during the pendency of the criminal proceeding, the individual defendants forwarded false evidence to the Queens County District Attorney's Office, *inter alia*, arrest reports, complaint reports, evidence vouchers, and property vouchers. Upon information and belief, they also withheld information and evidence from the Queens County District Attorney's Office that would exonerate Mr. Diaz.

57. Mr. Diaz suffered damage as a result of Defendants' actions. Mr. Diaz was, *inter alia*, deprived of liberty and suffered emotional distress, physical injury, mental anguish, fear, pain, anxiety, embarrassment, humiliation, and damage to reputation.

58. Upon information and belief, the charges against Mr. Diaz were dismissed on or about May 20, 2016.

59. Defendants, by their conduct toward Mr. Diaz as alleged herein, violated Mr. Diaz's rights guaranteed by 42 U.S.C. § 1983, the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

60. As a direct and proximate result of this unlawful conduct, Mr. Diaz sustained the damages alleged herein.

## FIRST CAUSE OF ACTION
*Unlawful Stop and Search*

61. Mr. Diaz repeats and realleges each and every allegation as if fully set forth herein.

62. Upon information and belief, the individual defendants violated the Fourth and Fourteenth Amendments because they stopped and searched Mr. Diaz without reasonable suspicion.

63. As a direct and proximate result of this unlawful conduct, Mr. Diaz sustained the damages alleged herein.

## SECOND CAUSE OF ACTION
*False Arrest*

64. Mr. Diaz repeats and realleges each and every allegation as if fully set forth herein.

65. The individual defendants violated the Fourth and Fourteenth Amendments because they arrested Mr. Diaz without probable cause.

66. As a direct and proximate result of this unlawful conduct, Mr. Diaz sustained the damages alleged herein.

## THIRD CAUSE OF ACTION
*Denial of Substantive Due Process*

67. Mr. Diaz repeats and realleges each and every allegation as if fully set forth herein.

68. Upon information and belief, the individual defendants created false evidence against Mr. Diaz, and also withheld information from prosecutors that would exonerate Mr. Diaz.

69. Upon information and belief, the individual defendants forwarded false evidence to prosecutors in the Queens County District Attorney's Office.

70. In creating false evidence against Mr. Diaz, forwarding false evidence to prosecutors, and withholding evidence that would exonerate Mr. Diaz, the individual defendants

violated Mr. Diaz's right to substantive due process under the Due Process Clause of the Fifth and Fourteenth Amendments of the Constitution of the United States.

71. As a direct and proximate result of this unlawful conduct, Mr. Diaz sustained the damages alleged herein.

## FOURTH CAUSE OF ACTION
*Failure to Intervene*

72. Mr. Diaz repeats and realleges each and every allegation as if fully set forth herein.

73. Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct; had an opportunity to prevent such conduct; had a duty to intervene and prevent such conduct; and failed to intervene.

74. Accordingly, the defendants who failed to intervene violated the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States.

75. As a direct and proximate result of this unlawful conduct, Mr. Diaz sustained the damages alleged herein.

## FIFTH CAUSE OF ACTION
*Monell*

76. Mr. Diaz repeats and realleges each and every allegation as if fully set forth herein.

77. This is not an isolated incident. Defendant City of New York, through its policies, customs, and practices, directly caused the constitutional violations suffered by Mr. Diaz.

78. Defendant City of New York, through the NYPD, has had, and still has, hiring practices that it knows will lead to the hiring of police officers lacking the intellectual capacity and moral fortitude to discharge their duties in accordance with the Constitution of the United States and is indifferent to the consequences.

79. Defendant City of New York, at all relevant times, was aware that the individual defendants routinely committed constitutional violations such as those at issue here and has failed to change its policies, practices, and customs to stop this behavior. These constitutional violations include, upon information and belief, failure to investigate and making arrests without probable cause.

80. Upon information and belief, the individual defendants have, as a result of these various constitutional violations, been investigated, prosecuted, and/or disciplined by, among others, the Civilian Complaint Review Board, Internal Affairs Bureau, the Department Advocate, and the Chief of Department. As such, Defendant City of New York is well aware of the individual defendants' propensity for constitutional violations that are similar to those alleged herein.

81. Defendant City of New York, at all relevant times, was aware that the individual defendants are unfit officers who have previously committed the acts alleged herein and/or have a propensity for unconstitutional conduct. Among other ways Defendant City of New York was aware, it knew of actions commenced against the individual defendants for similar constitutional violations, including the actions entitled Gilliam v. City of New York, 12 CV 6416 (NG) (CLP) (E.D.N.Y.) and Diaz v. City of New York, 15 CV 1842 (ARR) (RER) (E.D.N.Y.).

82. The fact that Defendant City of New York has allowed the 114th Precinct to be used by Ms. Muso since 2011 to gain an advantage in her family court matter is representative of the fact that defendants either knew or should have known, that the individual defendants were engaging in unconstitutional practices, among others, failing to investigate and making arrests regardless of probable cause or any legitimate basis under the law; yet defendants have repeatedly

failed to take any action to end this conduct, and in fact expressly and/or tacitly encourage the lawless and unconstitutional actions.

83. The NYPD's failure to train, discipline or supervise officers regarding their obligation not to make an arrest without probable cause or some legitimate basis under the law, exhibited gross and wanton deliberate indifference to the constitutional rights of Mr. Diaz.

84. Defendants' persistent failure to take measures to curb this unconstitutional practice constitutes acquiescence in the known unlawful behavior of their subordinates. The prevalence and general knowledge of the foregoing situation between Mr. Diaz and Ms. Muso, and the failure of supervisory defendants to take remedial action, constitute deliberate indifference to the rights of Mr. Diaz.

85. Because this explicit and/or tacit pattern and practice existed, defendants knew or should have known that police officers assigned to the 114th Precinct required training, supervision, and discipline regarding their obligations to investigate and not make arrests absent probable cause or any legitimate basis under the law.

86. These policies, practices, and customs were the moving force behind and proximate cause of Mr. Diaz's injuries.

PRAYER FOR RELIEF

WHEREFORE, Mr. Diaz respectfully requests judgment against Defendants as follows:

(a)     Compensatory damages against all defendants, jointly and severally;

(b)     Punitive damages against the individual defendants, jointly and severally;

(c)     Reasonable attorney's fees and costs pursuant to 28 U.S.C. § 1988; and

(d)     Such other and further relief as this Court deems just and proper.

Dated: New York, New York
April 9, 2018

By: /s/
Gregory P. Mouton, Jr., Esq.
MoutonDell'Anno LLP
*Attorneys for Plaintiff Guzman Diaz*
305 Broadway, 7th Floor
New York, NY  10007
Phone & Fax: (646) 706-7481

18 CV 551 (WFK) (RER)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

GUZMAN DIAZ,

Plaintiff,

-against-

CITY OF NEW YORK, DETECTIVE KEITH ADAMISZYN, DETECTIVE ANTHONY VIGNONE, DETECTIVE DANIEL AUTERA, POLICE OFFICER ANDREW PIZZINO, and SERGEANT JUAN CRUZ,

Defendants.

FIRST AMENDED COMPLAINT

**MOUTON**DELL'ANNO LLP

305 Broadway, 7th Floor
New York, NY  10007
Phone & Fax: (646) 706-7481